TilghmAn C. J.
The plaintiffs claim under a lottery warrant, bearing date 17th May, 1785, on which a survey was made July 1st, 1785) and returned into the office of th,e surveyor general, September 15th, 1785. The defendants, whose original tittle was derived from the state of Connecticut, claim.under certificates issued by the commissioners appointed by virtue of the Compensation Act of Pennsylvania, passed 4th April, 1799, and the several supplements thereto. These certificates bear date in the year, 1804. By the compensation act, the commissioners were not authorised to issue a certificate to any Connecticut claimant, except for land which had been released by a Pennsylvania claimant, nor could any Pennyslvania claimant release and obtain a compensation from the commonwealth, except his title had accrued prior to the decree of Trenton, (30th December, 1782.) These restrictions, having been found inconvenient, have been removed by several acts supplementary to the compensation law. By the act of 6th April, 1802, section 9, the commissioners were directed to issue certificates to Connecticut claimants, who should establish' their titles in the manner prescribed by the act of 4th April, 1799, for the whole of each tract claimed by them, whether released to the commonwealth by the Pennsylvania claimant, or not; and the Pennsylvania claimant, thus deprived of his land, was entitled *514 to an action against the commonwealth, for the recovery of a just compensation, to be assessed by a jury. By the act of 9th April, 1807, further time was given to Connecticut claimants, who had neglected to enter their claims, and the benefit of the former laws was extended to lands not occupied by any settler, prior to the decree of Trenton. Pennsylvania claimants also, whose titles had accrued at any. time prior to the 28th March, 1787, were admitted to a compensation from, the commonwealth, provided they executed releases, and transmitted the same to the secretary of the land office by the first day of August, 1807; but there is no provision for compensation, to those who did not release before that day. The plaintiffs, if they had thought proper, might have released, and received compensation under this last act. But they did not. What then is the consequence ? Are they to be deprived of their lands without compensation? We cannot suppose, that such was the intent of the legislature. If it had been intended to transfer the title from the Pennsylvania to the Connecticut claimant at all events, provision would have been made for' compensation at all events, as was done by the act of 6th April, 1802; because even the legislative power has its bounds. The people have not entrusted their representatives with authority to commit an act of such wanton injustice, as to take the property of an individual without compensation. But they have given them power to do every thing which the common good requires; that is to say, to take away property in cases of necessity, of which the legislature is to judge, making reasonable compensation. The sentiments of this Court were expressed on this point, in the case of Enslin, &c. v. Bowman, &c. Executors of Stewart, (Sunbury, June, 1814). (a) So that I by no means concur with the opinion of the Court of Common Pleas, that the plaintiffs were barred of their recovery, because the act of assembly took away their title, and that the not making provision for compensation was an omission which might be supplied by a future law. But since the time when judgment was given for the defendants by the Court of Common Pleas, an act of assembly has been passed, (3d March, 1812,) by which all persons claiming under a Pennsylvania title, by patent or location, or a warrant on which a survey has been returned prior to the 28th March, *515 1787, and who have not released to the commonwealth, and whose lands have been surveyed, valued, and certified to a . Connecticut claimant under the act of 6th April, 1802, or 9th April, 1807, may institute suits against the commonwealth, and recover a just compensation. The case of the plaintiffs falls within this last act. Therefore, although the judgment of the Court of Common Pleas was erroneous, yet, at the present moment, the plaintiffs ought not to recover the land, because, upon a view of the record and the last act of assembly, it appears to this Court, that the defendants are protected in their possession. I am therefore of opinion, that our judgment should go no farther than to reverse the judgment of the Court of Common Pleas.
Yeates J.
drew up an opinion, which has been mislaid, and the reporter is unable to say, whether he agreed with the other judges or not.
Brackenridge J, concurred with the Chief Justice.
. Judgment reversed.

 6 Binn. 462.